Anthony PONTELLO, Appellant,

v.

QUARTZ AND DUGAS, INC., et al., Appellees.

No. 16603.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 12, 1976.

Rehearing Denied March 11, 1976.

Jamail & Gano, Don M. Barnett, Houston, for appellant.

Weitinger, Steelhammer & Tucker, Jack W. Tucker, Jr., Houston, for appellees.

COLEMAN, Chief Justice.

This is an appeal from a take nothing judgment entered by the trial court in a case arising out of an automobile accident. The judgment was entered pursuant to a jury verdict. The plaintiff contends that certain jury answers failing to find the defendant guilty of negligence are so contrary to the great weight and preponderance of the evidence as to be clearly wrong. We affirm.

While traveling north on Interstate 45, the right rear tire and wheel came off a 2–ton truck owned by Quartz and Dugas, Inc. and driven by Bobby Lain. As a result the truck blocked nearly the entire width of the two northbound lanes of the highway. Plaintiff, who was traveling north on the same road, was unable to stop his vehicle in time to avoid a collision with the truck.

The accident happened at night. There is a conflict in the evidence as to whether the driver turned off the truck's lights after it came to a stop.

The testimony establishes that the improper tightening of the lug bolts might result in their being sheered off. One witness who was qualified as an expert testified that the sheering of the lug bolts must have been caused either because the vehicle was overloaded beyond its 2–ton capacity or because the lug bolts were improperly tightened.

Mr. Fred Marvin Calder, the president of the corporate defendant in 1971, testified that the truck was loaded the morning before and left the terminal at about 3:00 o'clock at night. Mr. Lain was the driver and he had driven approximately 75 miles before the wheel failed.. After he had examined a photograph which was taken at the time of the collision, he testified that he didn't remember what was in the boxes and didn't know the weight he was carrying, but that it was nowhere near the capacity of the truck. He testified that the trucks were maintained on a monthly basis by the dealer who sold them. He testified that the lug bolts were checked regularly because the brake assembly had to be checked. He also testified that a wheel could come off if the lug bolts were not tight but that was one chance in a million. He said that he did not know the exact date when the truck had last been checked out. He admitted that it was the corporation's responsibility to see that the trucks were in good working condition. He also testified that they had a man hired to check the lug bolts "any time he got one in the terminal, daily, I would say." He agreed that if the man did not check the truck and it went out with a loose lug bolt he wasn't doing his job. On further questioning he said that his man was sort of jack of all trades and that if someone came in and made a complaint he would take care of it. This man did not have a check out list, and "he didn't have to pass every truck out of the terminal before it went", and that if somebody didn't complain he wouldn't know anything was wrong. The truck had been in service approximately four months.

Mr. La Rue, the expert witness, testified that the lug bolts should be checked approximately every 10,000 miles, but that if you were carrying a full capacity load it would be a good idea to check them every 5,000 miles. He testified that if a truck is loaded beyond its capacity, there will be a strain on the lug bolts that can cause them to break and that the same thing could happen if the lug bolts are not properly tightened. He testified that he knew of no other reason for the lug bolts to sheer off.

Mr. Pontello, the plaintiff, testified that he was going north on High 45 just on the other side of Huntsville when all of a sudden the truck loomed up in front of him. He put on his brakes and veered to the left and collided with the truck. There were no flares and no lights on. He testified that it was pitch dark, that his headlights were working, and that there was nothing that distracted his vision in any way. He testified that the truck just appeared in front of him, that he didn't know whether it was moving or stopped, and that he didn't know whether the rear end of the truck or the side of the truck was facing him. He didn't know how far the truck was from him when he first saw it. On cross-examination he was asked to explain a statement which he made to Dr. Barnes that the truck spun out in front of him and he hit it. He stated that that was just a figure of speech, that he had to tell him something. He also admitted that on deposition he stated: "The truck just jumped out of the clear blue sky." He explained that by stating that it was just an expression and that it was in fact pitch dark. In the same deposition he stated that he meant that the truck "jumped up all of a sudden. There it was." He stated that when he first saw the truck it seemed only a matter of seconds before he hit it, and about the only thing he remembered was that he put on his brakes and tried to swerve to the left.

Tommy Moore, a highway patrolman, investigated the accident. He was called around 6:15 a. m. and arrived at the scene around 6:30 a. m. He identified certain photographs which had been introduced in evidence and testified that they were taken about the time he arrived on the scene, and shortly after the accident happened. He testified that the truck's headlights and taillights were on when he arrived at the scene. He was unable to identify any skid marks caused by Mr. Pontello's car, but it had begun to rain after the accident occurred. Officer Moore testified: "If the lug bolts aren't tight it would eventually cause you to sheer the lugs." He talked to the driver of the truck, Mr. Lain, some thirty minutes after the accident occurred. The driver stated that he was traveling north on Interstate 45 when his right rear tire on the truck, the tire and wheel, came off and he lost control of the vehicle and slid to a stop on the freeway. He got out of the vehicle on the left side and walked around to the right front door and opened it and removed the flares or reflectors from the vehicle and as he was walking back around the front of the vehicle the other vehicle hit the side of his truck. The driver was standing by the front fender of the vehicle when the accident occurred.

In addition to the headlights and taillights, pictures taken at the scene prior to the time the vehicles were removed from the highway show that the truck was equipped with reflectors and cab lights. The truck completely blocked both lanes of traffic. It was sitting at an angle, the front end being nearer the approaching traffic than the rear end. The pictures show that at least one of the front lights, the cab lights, and the side reflectors could be seen by northbound traffic.

Special Issue No. 1 reads:

"On the occasion in question, was Quartz and Dugas acting through its employees or Bobby Leon Lain, negligent in the manner that their truck was maintained prior to the collision in question or negligent in regard to warning the plaintiff, Anthony Pontello, about their truck's presence on the highway?"

The jury answered "no" both with respect to maintenance and warning. The jury also failed to find the plaintiff guilty of negligence in any respect.

The plaintiff argues that the testimony shows conclusively that the disabled condition of the truck on the highway resulted from the fact that the lug bolts sheered off. All the witnesses testified that such a condition could result if the lug bolts were improperly tightened. Mr. La Rue testified that the only other thing that could cause the lug bolts to sheer off was driving the truck in a overloaded condition. He argues that the testimony of Mr. Calder that the lugs were inspected daily considered in relation with the testimony that the cause of the sheering of the lugs could have been the fact that the lug bolts were not properly tightened, establishes the fact that the employee of the defendant charged with the duty of making the inspection made a negligent inspection.

The jury might have arrived at a conclusion based on the evidence in the record that proper maintenance procedures would require an inspection of the lug bolts at monthly intervals or after the truck had been operated from five to ten thousand miles. There is no evidence as to the number of miles the truck had traveled since the last inspection. There was evidence that the truck was inspected at least on a monthly basis and that the inspection included checking the lug bolts. The monthly inspections were made by employees of the automobile dealer. While the jury might have believed the testimony that daily inspections were made by an employee of Quartz and Dugas, they were not required to do so since Mr. Calder also testified that this employee only took care of problems that were called to his attention by the drivers. The overwhelming preponderance of the evidence does not require a finding that the defendant was negligent in the manner that its truck was maintained prior

to the collision in question. There is no testimony showing the length of time required before an insufficiently tightened lug bolt would sheer off. There is evidence that the defendant made provision for regular maintenance work to be done on their trucks. The question of whether the care that the corporation exercised in that regard was proper care is one for the jury. If it be conceded that the lug bolts were sheered off because the lug nuts were not sufficiently tight, there is no evidence to show how long such a condition existed. It is not established, therefore, that a reasonably prudent man in the exercise of ordinary care would have discovered the condition at a time when it could have been repaired prior to the collision. The issue considered is not sufficiently broad to cover the question of whether the defendant was negligent in operating the truck while carrying weight in excess of its capacity. There is no evidence that the truck was in fact overloaded. The issue directs the attention of the jury to the manner in which the truck was maintained. This relates to the methods adopted by the company to keep the truck in an efficient mechanical condition. There is no testimony as to the policy of the company with reference to operating overloaded trucks.

The testimony shows that the accident happened on a dark night. When the truck became disabled it appears that the driver immediately secured flares and was in the process of putting them out as a warning to oncoming traffic. There is nothing in the evidence to suggest that he had time to complete this mission, or that there was a more effective method of warning the approaching traffic. There is evidence from which the jury could conclude that the lights on the truck were shining at the time of the collision. There is little, if any, evidence that the driver failed to take such precautions to warn the oncoming traffic as should have been taken by an ordinarily reasonable person in the exercise of ordinary care.

The judgment is affirmed.